# IN THE UNITED STATES DISTRIC COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARI NAGY,
on behalf of herself and all others
similarly situated.

                Plaintiff,

v.

LORDSTOWN CONSTRUCTION
RECOVERY, LLC,

                Defendant.

Case No. 4:22-cv-01376-BYP

Judge Benita Y. Pearson

---

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Plaintiff Mari Nagy ("Plaintiff"), on behalf of herself and all others similarly situated, respectfully moves this Court for the entry of an order granting final approval of the Settlement Agreement. The proposed final approval order is attached hereto as **Exhibit 2**. In support of this motion, Plaintiffs state as follows:

1. On August 4, 2022, Plaintiff Mari Nagy filed this case as a class action against Defendant Lordstown Construction Recovery, LLC ("Defendant"), bringing claims of nuisance, negligence, and gross negligence, alleging that Defendant's operation of a landfill near Plaintiff's home caused odor and dust impacts to her home and to the homes of her neighbors. *See* (ECF No. 1, PageID 1, ¶ 1).

2. In an effort to avoid the time, risk, and expense of further litigation, the Parties engaged in lengthy settlement discussions to determine whether a resolution of the case could be

1

reached before conducting extensive discovery concerning issues of class certification and briefing and oral argument on Plaintiff's anticipated Motion for Class Certification. To this end, the Parties engaged in two full day mediation sessions with two experienced neutrals, the Honorable Richard McQuade and the Hon. James McMonagle in December 2022 and November 2023, respectively.

3.      Based upon their investigation and evaluation of the facts and law relating to the matters alleged in the action, Plaintiff (on behalf of herself and the proposed Class) and Class Counsel have agreed to settle the lawsuit, pursuant to the terms of the Settlement Agreement.

4.      The terms of the proposed settlement are fully set forth in the Settlement Agreement, attached hereto as **Exhibit 1**. Defendant has agreed to pay $1,200,000 in direct monetary relief to be allocated pursuant to the procedures outlined in the Settlement Agreement. (**Ex. 1**, pg. 16, § 6).

5.      The parties have agreed to a Class, for purposes of this Settlement only, consisting of the following:

> All owner/occupants and renters of residential property residing within three (3) miles of the landfill's property boundary at any time during the Class Period who do not affirmatively opt out of the Settlement Agreement as provided herein. (**Ex. 1**, pg. 5, § 2(b)).

The Class Area is specifically delineated in the Class Area Map, attached as **Exhibit 1-A**. The Effective Date means the date on which this settlement becomes binding as to all parties, which shall be the date on which the Final Judgment and Order approving the settlement becomes Final.

6.      The proposed Settlement was achieved as the result of good faith negotiations between the Parties, with the assistance of experienced neutral mediators, and without any undue influence. Each side has zealously represented its interests. (**Ex. 3- Declaration of Laura L. Sheets, ¶¶ 11-12).**

7.      The proposed Settlement was achieved by counsel experienced in similar litigation. (**Ex. 3, ¶¶5-9**).

8.      On February 16, 2023, Plaintiff presented the Settlement to the Court and moved for an order preliminarily approving the Settlement pursuant to Fed.R.Civ.P. 23(e). (ECF No. 28).

9.      The Court entered an Order preliminarily approving the Settlement on February 22, 2024 (ECF No. 30), which conditionally certified the Class under Fed.R.Civ.P. 23(a) and (b)(3) and determined that the Settlement is "preliminarily approved as fair, just, reasonable and adequate, subject to further consideration at a Fairness Hearing." (ECF No. 30, PageID. 368, ¶ 1). The Court further approved the class notice as "the best notice practicable under the circumstances." (*Id.*, PageID. 369, ¶ 8).

10.      A Final Fairness Hearing was set for May 29, 2024 at 10:00 a.m., at which time the Court will consider any objections and whether to enter Final Judgment. (*Id.*, PageID. 370, ¶ 12).

11.      On March 14, 2024, Class Counsel disseminated the approved Class Notice to all available residential addresses within the Class Area. (**Ex. 3, ¶ 25).** Class Counsel additionally created a Settlement Website, hosted at www.lsccounsel.com/lordstown, where copies of the Notice, Claim Form, Settlement Agreement, Class Area Map, and Complaint were published and made available to Class Members. Class Counsel also published the Notice in *The Review*, a newspaper of general circulation in the Class Area. (**Ex. 5- Publication Confirmation**).

12.      Class Counsel is pleased to report that the reaction of the Class to the proposed Settlement has been overwhelmingly positive. The deadlines for Claims, Opt-Outs, and Objections have closed, with roughly 450 Class Member Households having submitted valid claims that have been approved for payment by Class Counsel as of the date of this filing.

13.     No objections have been received, and only 8 Class Member Households have opted out. (**Ex. 4- Opt-Outs**).

14.     For the reasons discussed in greater detail in the enclosed Memorandum in Support, Plaintiff respectfully requests that the Court grant final approval of the Class Action Settlement by entering the Order attached here as **Exhibit 2**, granting:

a.   Final approval of the Settlement as fair, reasonable, and adequate;

b.   Final certification of the Class for settlement purposes;

c.   Final appointment of Plaintiffs as Class Representatives;

d.   Final appointment of Class Counsel;

e.   Plaintiff's request for attorneys' fees in the amount of $321,750 and reimbursement of litigation costs in an amount not to exceed $20,000;

f.   An incentive award of $10,000 to the Named Class Representative.

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Class, respectfully request that the Court grant this Motion and enter the proposed Final Approval Order (**Exhibit 2**).


Dated: May 15, 2024                                    Respectfully Submitted,

                                                       */s/ Matthew Z. Robb*
                                                       Laura L. Sheets*
                                                       Steven D. Liddle*
                                                       Nicholas A. Coulson*
                                                       Matthew Z. Robb*
                                                       *Admitted Pro Hac Vice*
                                                       **LIDDLE SHEETS COULSON P.C.**
                                                       975 E. Jefferson Avenue
                                                       Detroit, Michigan 48207-3101
                                                       Tel: (313) 392-0015
                                                       Fax: (313)(313) 392-0025
                                                       lsheets@lsccounsel.com
                                                       sliddle@lsccounsel.com
                                                       mrobb@lsccounsel.com

4

_s/ Daniel P. Petrov_
Daniel P. Petrov
Thorman Petrov Group Co., LPA
50 East Washington Street
Cleveland, OH  44022
Tel: 216.621.3500 | Fax: 216.621.3422
dpetrov@tpgfirm.com

_Attorneys for Plaintiff and Class_

**IN THE UNITED STATES DISTRIC COURT**
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARI NAGY | ) | |
| on behalf of herself and all others | ) | |
| similarly situated. | ) | |
| | ) | Case No. 4:22-cv-01376-BYP |
| Plaintiff, | ) | |
| | ) | Judge Benita Y. Pearson |
| v. | ) | |
| | ) | |
| LORDSTOWN CONSTRUCTION | ) | |
| RECOVERY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## INTRODUCTION

Plaintiff Mari Nagy brought this action on behalf of herself and a proposed class of her neighbors, alleging that noxious odor and fugitive dust emissions from Defendant Lordstown Construction Recovery, LLC, (hereinafter, "Lordstown" or "Defendant") have entered her property, and properties throughout the proposed Class Area, interfering with the ability of the proposed class to use and enjoy their homes and properties.

This case now comes before the Court for a determination regarding the fairness, reasonableness, and adequacy of the Class settlement, with notice having now been delivered to the Class and the Class having provided an overwhelmingly positive response. In fact, Class Counsel have received approximately 450 Claims, only 8 Opt-Outs, and zero Objections. (**Ex. 3- Declaration of Laura L. Sheets, ¶¶ 26-29**); (**Ex. 4- Opt-Outs**). In light of the  Class's

1

substantially supportive reaction, and the significant benefits conferred by the Settlement compared to the costs, risks, and delay or further litigation, the Settlement exceeds the standard required for final approval.

Plaintiff's Counsel at Liddle Sheets Coulson PC ("LSC") are among the few, and perhaps only, firms in the United States to dedicate a substantial proportion of its practice to litigation these types of cases with tangible results. This is because the necessary resources and experience, as well as the risk of substantial losses, make such cases difficult or even impossible for most law firms to take on. As stated by one federal court:

> Class Counsel—from the Detroit-based firm Liddle [Sheets Coulson] P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Class Counsel is deeply versed in analyzing the strengths of such cases, the potential benefits of appropriately settling them, and the costs, risks, and delay that would be imposed on the Class in the absence of settlement. (**Ex. 3, ¶¶ 5-9)**. This experience has led to an outstanding result for the Class here, and Plaintiffs accordingly request that this Court grant final approval to the Settlement.

## **FACTUAL BACKGROUND**

Plaintiff filed this suit on August 4, 2022, following extensive pre-suit investigation by Plaintiff's Counsel. Plaintiff, on behalf of herself and a proposed class of her similarly-situated neighbors, alleges that noxious odor and fugitive dust emissions from the Lordstown Construction Recovery Landfill (the "Landfill"), owned and operated by Defendant, have interfered with Class Members' ability to fully use and enjoy their homes and have adversely impacted property values.

Plaintiff asserted claims for private nuisance, public nuisance, negligence, gross negligence, and trespass. Defendant denies and has vigorously opposed each of these claims throughout the course of the litigation.

This case has been litigated vigorously. Defendant moved to dismiss Plaintiff's claims, arguing that they were time-barred by O.R.C. § 2305.09 and that Plaintiff could not pursue claims for Public Nuisance or Trespass. The Court largely denied Defendant's Motion, with the exception of dismissing Plaintiff's trespass claim. Since that time, the Parties have provided initial disclosures, negotiated a scheduling order, attended case management conferences, and issued detailed discovery requests. However, in an attempt to avoid the risk, cost, and delay of continued litigation, the Parties engaged in two-full day mediations several months apart, eventually reaching resolution via a proposal put forth by the Hon. James McMonagle. Plaintiff now presents the Settlement Agreement for final approval.

## I.   TERMS OF THE SETTLEMENT AGREEMENT

Plaintiff relies on her previously filed memorandum of law in support of her Motion for Preliminary Approval of Class Settlement (Dkt. No. 28) for a complete summary of the material terms of the Settlement, which is attached hereto as **Exhibit 1.** Under the Settlement, Defendant will be required to provide monetary relief to the Class in the amount of $1,200,000, which will be distributed on an equal, per household basis (after the payment of costs, attorneys fees, and incentive awards such as the Court may approve) to all Households who timely submit an approved claim form. (**Ex. 1**, pg. 16, § 6).

In exchange for this $1,200,000 payment, Plaintiff offers a full release and discharge by Plaintiff and the Class of any claims that were, or could have been, asserted between August 4, 2018, and the Effective Date of the Settlement (the "Class Period"). (*Id.*, pgs. 18-20, §7; pg. 6, §

2(f)). The Release expressly preserves the Class's right to bring any claims that any may have for past, present, or future claims for medical harm or personal injuries related to the Landfill's emissions. (*Id.*, pg. 8, § 2(x); pgs. 18-20, § 7).

Additionally, the Settlement provides fair, easy to understand terms for Class Members to exercise their right to claim payment, opt out, or object to the Settlement. From the date the Notice was mailed out and published in *The Reserve*, Class Members were afforded forty-five (45) days to submit a valid, timely Claim Form to obtain an equal share of the common fund. (*Id.*, pgs. 16-17, § 6); (ECF No. 28, Ex. 1-E- Claim Form). Class Members who wished to opt out of or object to the Settlement were afforded thirty (30) days to do so. (*Id.*).

## II.      CLASS NOTICE AND REACTION OF THE CLASS.

The reaction of the Class to the Settlement has been overwhelmingly, and nearly unanimously, positive. Class Counsel disseminated the Court-approved Class Notice to all available residential addresses within the Class Area on March 15, 2024.[1] (**Ex. 3, ¶ 25**). Class Counsel additionally created a Settlement Website, where copies of the Notice, Claim Form, Settlement Agreement, Class Area Map, and Complaint were published and made available to Class Members.[2] Class Counsel also published the Notice in *The Review*, a newspaper of general circulation in the Class Area. (**Ex. 5- Publication Confirmation**). In short, Class Counsel completely and successfully completed the approved Notice program.

By all accounts, the Notice was effective and the Class is overwhelmingly approving of the Settlement. (**Ex. 3, ¶¶ 32-33).** Class Counsel has received approximately 450 valid and timely

---

[1] Claim Forms were mailed to 1713 residential households. (**Ex. 3, ¶ 25**).

[2] www.lsccounsel.com/lordstown (last visited May 9, 2024).

Claim Forms approved for payment and only eight (8) opt outs. (*Id.*, ¶¶ 26-29; **Ex. 4- Opt-Outs**). No objections were received.

### III.    PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND AN INCENTIVE AWARD FOR THE NAMED CLASS REPRESENTATIVE.

Pursuant to the terms of the Settlement, Plaintiff has the right to request payment of reasonable attorneys' fees, costs or expenses, and an incentive award for the Mari Nagy, the Named Class Representative, not to exceed $10,000. (**Ex. 1**, pg.15, § 5).

The Settlement provides that Class Counsel may apply to the Court for an award of attorneys' fees in an amount not to exceed one-third (1/3) of the Total Settlement Value, in addition to "any and all fees, costs, and Settlement Administration and notice fees." (*Id.*, pg. 11, § 3(f)). Additionally, the Settlement allows for Plaintiff to apply for a one-time incentive payment of no more than $10,000, subject to the Court's approval, in addition to any payments she may receive by virtue of her status as a Settlement Class Member. (*Id.*, pg. 15, § 5(c)). Each of these terms were expressly and clearly explained to Class Members via the approved Notice. (ECF 28-1-E, PageID. 332). No objections were made to the requested attorneys' fees or the incentive payment to the Named Class Representative.

For the following reasons, Plaintiff respectfully requests that the Court finally approve the Settlement by entering the Order attached hereto as **Exhibit 2.**

### LEGAL STANDARD

The Sixth Circuit has long recognized that the law favors the settlement of class action lawsuits. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and

unpredictable' and settlement conserves judicial resources*." In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted). "The district court may give its final approval of a class action settlement if it determines that the settlement is 'fair, adequate, and reasonable, as well as consistent with the public interest." *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 904 (S.D. Ohio 2001) (quoting *Bailey v. Great lakes Canning, Inc.*, 908 F.2d 28, 42 (6th Cir. 1990)); *see also Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) ("Before a district court approves a settlement, it must find that the settlement is fair, reasonable, and adequate.") (internal quotation marks omitted).

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). In granting final approval, courts are directed to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    i.   the costs, risks, and delay of trial and appeal;

    ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii. the terms of any proposed award of attorney's fees, including timing of payment; and

    iv. any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

6

Fed. R. Civ. P. 23(e)(2); *see also In re Sonic Corp. Customer Data Security Breach Litigation*, No. 1:17-md-2807, 2019 WL 3773737, at *5 (N.D. Ohio August 12, 2019).

Some courts continue to consider the factors used to evaluate settlement fairness prior to the Rule 23(e) amendments. "In addition to the Rule 23(e)(2) factors, courts may also consider circuit-specific factors in the analysis. In the Sixth Circuit, those factors (the "UAW factors") are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See UAW*, 497 F.3d at 631. "No single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case." *Id*. (citation omitted). Factors 1-5 are largely subsumed by the Rule 23(e)(2) factors. *See Macy v. GC Servs. Ltd. P'ship*, 2019 U.S. Dist. LEXIS 210632, at *4-5 (W.D. Ky. Dec. 6, 2019).

## ARGUMENT

I.     **The Court Should Finally Approve the Settlement as Fair, Reasonable, and Adequate.**

The Settlement Agreement easily satisfies the fair, reasonable, and adequate standard because it delivers substantial financial relief to the Class on an immediate basis, without delaying or subsuming any future award with protracted, complex, risky, and costly litigation—the result of which would be anything but certain. Further, the Settlement preserves all future claims and all claims for personal injury, ensuring that the Class' rights are adequately protected. The fairness of this Settlement is additionally bolstered by the significant claim rate and the lack of even a single objection, which are highly common in cases of this type.

A.  **Plaintiff and the Class Counsel  Have Zealously and Adequately Represented the Interests of the Class.**

7

There are "two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Here, Plaintiff is represented by highly experienced class counsel at LSC, which has been litigating air pollution cases of this type for more than 25 years. (**Ex. 3, ¶¶ 5-9**). Plaintiff's counsel has been appointed to represent many dozens of classes of residents in dozens of similar cases in both state and federal courts, and has extensive experience in both negotiating and administering similar settlements. (*Id.*, **¶ 33**).

This excellent Settlement was reached on behalf of the Class in large measure due to LSC's experience, diligent pre-suit investigation, and vigorous advocacy on behalf of the Class. This pre-suit investigation consisted of Freedom of Information Act requests to the Ohio Environmental Protection Agency and Trumbull County. (**Ex. 3, ¶ 13**)**.** Class Counsel additionally surveyed the putative class regarding their experiences with the noxious odors and fugitive dust from the Landfill. (*Id.*). Class Counsel is undoubtedly adequate.

Further, the Named Class Representative in this case has been highly responsive, stepped forward to represent the interests of the Class, taken on the risks inherent in filing a federal lawsuit, and has no conflicts with any Class Members. (**Ex. 3, ¶ 39**). Overall, the adequacy factor is easily satisfied and weighs strongly in favor of final approval.

**B. The Settlement Was Reached as a Result of Extensive Arm's-Length Negotiations With Neutral Mediators.**

"Courts generally presume the absence of fraud or collusion unless proven otherwise." *Pansiera v. Home City Ice Co.*, No. 1:19-cv-1042, 2024 WL 813759, at *4 (S.D. Ohio February 27, 2024) (slip opinion); *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D.

483, 501 (E.D. Mich. 2008) ("Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion."). "[T]he involvement of a neutral or court-affilliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed.R.Civ.P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

In reaching this Settlement, the Parties engaged in two separate full-day mediations before the Honorable Richard McQuade and the Hon. James McMonagle in December 2022 and November 2023, respectively. At both mediations, but the second particularly, a frank discussion was held between the Parties regarding the substantive costs and benefits presented to each side that allowed both sides to carefully evaluate the value of this case and agree that the benefits of early resolution greatly outweighed the risks and costs of continued litigation. While settlement is necessarily a compromise, the Settlement addresses the concerns of Plaintiffs and the Class and delivers valuable monetary relief approved by Judge McMonagle through his mediator's proposal that ultimately settled this case.

### C.  The Proposed Relief is Highly Adequate.

Rule 23(e)(2)(C) requires the Court to ensure that "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed.R.Civ.P. 23(e)(2)(c). Consideration of these factors readily supports final approval.

Defendant's payment of $1,200,000 is an excellent result for the Class under the circumstances of this case. The costs, risks, and potential delays in a case of this type are difficult to overstate. Litigating air pollution class actions is inherently costs, time consuming, risky, and often requires the involvement of highly specialized experts and the necessity for extensive documentary and testimonial evidence. (**Ex. 3, ¶ 16**). The class certification stage alone typically lasts for a period of years and involved substantial costs, without significantly enhancing the likelihood of favorable judgment at trial. (*Id.*, ¶ 18). In the past, LSC has expended in excess of $200,000 at the class certification stage alone. (*Id.*, ¶ 21).

Although Plaintiff believes that her claims, and those of the Class, are meritorious, Plaintiff faces significant risks in seeking to obtain a judgment against Defendant in this matter, any number of which could have been the death knell of the case. (**Ex. 3, ¶ 17).** Odor nuisance class actions are unique from many other substantive categories of class action litigation, in that they are not infrequently denied certification depending on the underlying factual circumstances. (**Ex. 3, ¶ 23**.). While Plaintiff continues to believe that class certification would have been appropriate in this case even absent settlement, Class Counsel also recognizes that class certification, particularly in an environmental case, is anything but certain.

Beyond the "rigorous analysis" standard now employed by federal courts evaluating the merits of class certification, Plaintiff recognizes the significant risk in obtaining class certification in federal courts. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remains, either of which represents a significant risk and would substantially delay a possible resolution. *See Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448, at *5 (W.D. Ky. Aug. 2, 2013) (decertifying class).

If class certification were denied, the practical effect for the vast majority of the class would likely be to receive no relief at all. (**Ex. 3, ¶ 18).** Even if a large number of class members brought actions in their individual capacities, many hurdles would remain, and it is possible, if not likely, that the costs of litigation, without the benefit of being spread across the class, would significantly erode any potential recovery. (*Id.*)

Litigating beyond the class certification stage would necessarily involve voluminous discovery and likely hundreds of thousands of dollars' worth of expert testimony. Such litigation could proceed for several years through trial and likely appeals. Even if Plaintiff were able to prove to the finder of fact that significant odors were emitted from Defendant's Facility, Plaintiff would still need to prove that those odors were transported to the properties throughout the Class Area at nuisance levels. (**Ex. 3, ¶ 19**). This would likely result in competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain, and the risk of no recovery would be significant. (*Id.*) While Plaintiff is confident that she would have made a strong case, the sheer number of variables in substantiating claims on behalf of the proposed Class makes winning and sustaining a judgment an uncertain proposition.

Further, Plaintiff would have had to establish damages, both individually and on a class basis. In addition to being costly and time consuming, Defendant could and likely would have challenged Plaintiff's damages and/or the damages alleged on behalf of the Class. (**Ex. 3, ¶ 20).** There are any number of hurdles that have a very serious chance that no recovery at all would be obtained if the case proceeded through class certification, appeal, merits discovery, expert discovery, trial, and proof of damages. (**Ex. 3, ¶ 18).**

The Settlement achieves substantial benefits for the class without expending additional resources and without delay. The Class will obtain immediate relief, as opposed to waiting years

for an uncertain outcome which, if it arrives at all, would be many years down the road and significantly diminished by the costs of protracted litigation. The risks, costs, and delays associated with continued litigation, and the very real possibility of obtaining no recovery for the Class weigh heavily in favor of Settlement on these terms.

The other factors under Rule 23(e)(2)(C) are also satisfied. The Settlement Agreement provides for a claims process that guarantees the right of every class member to receive an equal share of the Settlement fund. The net Settlement fund will be divided equally on a per household basis between all households who submit a timely, valid claim form—of which there are currently approximately 450 valid claims. The proposed method for processing claims and distributing relief is thus fair, and experienced Class Counsel is more than qualified to effectuate the Settlement, as it has done in many dozens of similar cases in the past.

Finally, while the Court has discretion over the award of attorneys' fees, the settlement is not conditioned on any specific award of attorneys' fees or incentive award to the named Plaintiff. The Settlement explicitly states that the Court's award of attorneys' fees are "not consideration for this Settlement Agreement[.]" (**Ex. 1**, pg. 12, ¶3(g)). The Settlement terms regarding attorneys' fees are thus fair, and there are no agreements between the Parties other than the Settlement. This overwhelmingly supports final approval.

### D.  The Settlement Treats Class Members Equally Relative to One Another.

"An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2019 WL 3889621, at *10 (S.D. Ohio August 16, 2019) (citation omitted). Courts have approved *pro rata* distribution of the settlement fund as is proposed here. *Sellards v. Midland Credit Mgmt., Inc.*, No. 1:20-cv-02676, 2023 WL 3866023, at *8 (N.D. Ohio May 2, 2023) (slip

opinion) ("The proposed settlement intends to distribute the settlement funds (minus the attorneys' fees and class representative's incentive payment) on a *pro rata* basis among the class members … Thus, the class members will all be treated equally to each other."); *see also* (**Ex. 1**, pg. 15, § 5(d)).

The Settlement allows Plaintiff to request, at the sole discretion of the Court, a one-time $10,000 class representative incentive award to be paid to Named Plaintiff Nagy for her efforts on behalf of the Class. *See* (**Ex. 1**, pg. 15, § 5(c)). Apart from a discretionary incentive award, the Settlement does not grant any Class Member preferential treatment; all Class members are equally eligible to make claims for equal payment from the Settlement Fund. This factor is accordingly satisfied.

### E.  The Reaction of the Class Has Been Overwhelmingly Positive.

"That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the reaction of the class as a whole, and demonstrates that the Settlement is fair, reasonable, and adequate." *In re Polyurethane Foam Antitrust Litig.*, 168 F.Supp.3d 985, 997 (N.D. Ohio 2016) (citation and internal quotation marks omitted).

The reaction of absent class members weighs heavily in support of final approval. As stated above, approximately 450 Class Member households have submitted timely, valid claims, and there have been zero objections. *See* (**Ex. 3, ¶ 27).** The Class overwhelmingly approves of the Settlement, and this factor thus weighs heavily in favor of final approval.

### F.  Approval of the Settlement is in the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves

judicial resources." *Miranda v. Xavier Univ.,* No. 1:20-cv-539, 2023 WL 6443122, at *5 (S.D. Ohio October 3, 2023) (slip opinion) (quoting *In re Cardizen CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotation marks omitted).

The Settlement represents the favorable resolution of an alleged environmental impact to hundreds of Lordstown residents which will provide meaningful relief to the community and certainty to Defendant. Beyond the public interest in efficient resolution of complex litigation generally, this Settlement serves the important public interest of encouraging responsible environmental stewardship. This factor further cements the propriety of final approval.

## II.    The Class Remains Appropriate for Settlement Certification.

In granting preliminary approval, the Court conditionally certified the Class for settlement purposes. *See* (ECF No. 30). Notably, nothing has changed in the interim that would alter the Court's determination that class certification is appropriate. Indeed, class certification is perhaps even more appropriate at this stage, as more than 450 households have submitted valid, approved claim forms. This fact demonstrates that joinder of all of these households would be impracticable and that the type of claims involved here are overwhelmingly typical and common of one another. It is therefore vastly superior to resolve these claims through an efficient claims process, as provided through this Settlement, as opposed to a contested motion for class certification—the denial of which could operate to exclude many, if not all, of these claimants from the litigation.

In short, class certification for purposes of settlement remains appropriate and the Court should affirm its certification decision outlined in the Order Granting preliminary approval (ECF No. 30) by entering the Order Granting Final Approval attached as **Exhibit 2**.

## III.    The Requested Attorneys' Fees and Costs Are Reasonable.

Class Counsel requests an award of $321,750 in attorneys' fees, which represents approximately 27.5% of the net settlement fund after deduction of costs and the requested incentive award. The fee requested by Class Counsel falls squarely within the range permitted by the Settlement agreement and the range of awards regularly awarded in similar common fund cases.

"The Sixth Circuit directs district court, '[w]hen awarding attorney's fees in a class action, [to] ... make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'" *In re Polyurethane Foam Antitrust Litigation*, 168 F.Supp.3d 985, 1009 (N.D. Ohio 2016) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "A court has available 'two methods for calculating [common benefit] attorney's fees: the lodestar and the percentage-of-the-fund.'" *Id*. (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed.Appx. 496, 498 (6th Cir. 2011)). "District courts have discretion to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*, at 1009-1010 (citation and internal quotation marks omitted).

This Court generally applies the percentage-of-the-fund approach in awarding attorneys' fees in common fund cases. *See e.g., Lonardo v. Travelers Indem. Co.*, 706 F.Supp2d 766, 789 (N.D. Ohio 2010); *In re Sonic Corp. Customer Data Breach Security Litigation*, No. 1:17-md-2807, 2019 WL 3773737, at *9 (N.D. Ohio August 12, 2019); *Treviso v. National Football Museum, Inc.*, No. 5:17-cv-00472-CAB, 2024 WL 753560, at *6 (N.D. Ohio February 12, 2024). Under the percentage of the fund method, an attorneys' fee award of between 20-30% of the common fund is generally considered reasonable. *See In re Sonic*, at *11, n. 63 (collecting cases) ("In the Sixth Circuit, 20 to 30 percent of the common fund appears to be the typical range"). In cases where a Court awards attorneys' fees based on a percentage of the fund approach, all that is

required is that the award "be reasonable under the circumstances." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citation omitted). In analyzing the reasonableness of an award, Courts generally apply the following factors:

(1) The value of the benefit rendered to the plaintiff class;
(2) The value of the services on an hourly basis;
(3) Whether the services were undertaken on a contingent fee basis;
(4) Society's stake in awarding attorneys who produce such benefits in order to maintain an incentive to others;
(5) The complexity of the litigation; and
(6) The professional skill and standing of counsel involved on both sides.

*Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). Consideration of each of these factors here weighs strongly in favor of granting Class Counsel's fee request.[3]

The value of the benefit to the Class is outstanding, and each household making a claim will receive a significant monetary award because of Class Counsel's diligent and experienced advocacy. Class Counsel achieved this excellent Settlement without incurring necessary costs or subjecting the Class to the risk and expense of prolonged, risky class litigation. Additionally, the overwhelmingly positive reaction of the Class demonstrates that the Class shares Class Counsel's view of the value of the Settlement.

Importantly, Class Counsel's significant work and expenses were undertaken on an entirely contingent basis with no guarantee of any recovery. (**Ex. 3, ¶ 37).** Class Counsel's advocacy in this case came at the expense of taking on other cases, and rewarding Class Counsel for taking on this uncertain and difficult case is undoubtedly in the public interest. *See In re Broadwing, Inc. ERISA*

---

[3] In addition to the *Moulton* factors, Plaintiff notes that there have been no objections to Class Counsel's fee request, and Class Counsel requests significantly less than the amount allowed by the Settlement. *See Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000) ("The notice sent to the class members informed them that the attorney fees and expenses could total as much as one-third of the settlement amount and not one class member objected."). These factors similarly militate in favor of Class Counsel's fee request.

*Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved."). In noxious air pollution class actions in particular, the public interest strongly supports rewarding experienced counsel because there is a very limited private market for these risky and expensive cases.

Additionally, the terms of the retainer agreement with the Named Class Representative provided for a 33% percent recovery for Class Counsel of any settlement benefits. (**Ex. 3, ¶ 36).** Thus, the market for similar legal services supports the requested fee, which is notably substantially less than called for by both the retainer agreement and the Settlement.

As discussed above, this is highly complex environmental litigation and there are numerous practical and legal barriers that render any recovery whatsoever, let alone on behalf of the Class, risky and uncertain. Because of LSC's decades of experience litigating cases of this type, substantial benefits were obtained for the Class. The *Moulton* facts therefore weigh significantly in favor of the Court approving Class Counsel's fee request.

**IV.     The Court Should Approve Reimbursement of Reasonable Litigation Expenses**.

"Under the common fund doctrine, class counsel are generally entitled to reimbursement of all reasonable necessary expenses, including class-notice costs, incurred in the prosecution and settlement of claims." *Treviso*, 2024 WL 7535660, at *8 (collecting Sixth Circuit cases).

To date, Class Counsel has incurred $14,958.59 in out-of-pocket expenses that were necessary in advancing Plaintiff's claims to this favorable resolution. (**Ex. 3, ¶ 34.; Ex. 3-A- LSC Cost Sheet**). Additionally, pursuant to the terms of the Settlement, Class Counsel will be solely responsible for the costs of finalizing the Settlement and disbursing payment to the Class. (**Ex. 1,**

pg. 16, § 5(g)). In Class Counsel's vast experience, effectuating a settlement of this proportion after final approval typically costs up to $10,000. (**Ex. 3, ¶ 35**). However, Plaintiffs will limit their request for ongoing settlement administration duties to approximately $5,000, and accordingly request reimbursement of out-of-pocket litigation costs not to exceed $20,000.

The requested costs include itemized amounts for copies and postage, Freedom of Information Act requests, procurement of class mailing lists, legal research, limited travel, costs of the settlement notice, and costs of the two mediations. (**Ex. 3-A- LSC Cost Sheet**). All of these expenses were necessary and vital to the prosecution of this litigation and are eminently reasonable considering that Class Counsel has borne the entire cost of this litigation, including providing the Class Notice and administering the Settlement. Class Counsel has taken every step possible to keep costs low in this case in order to ensure the largest possible recovery for the Class. The request for reimbursement of actual costs incurred is reasonable and should be approved.

### V.     An Incentive Award of $10,000 to the Named Class Representative is Appropriate and Reasonable.

The Settlement provides for an incentive payment not to exceed $10,000 for Mari Nagy for her assistance in this case and service as the Named Class Representative. (**Ex. 1,** pg. 15, § 5(c)). "An incentive award is appropriate here because the Parties agreed in the Settlement to service awards and there have been no objections to such an award." *Treviso*, 2024 WL 7535660, at *9.

Named Class Representative Nagy stepped forward to pursue this litigation on behalf of her community and neighbors, taking on all of the risks inherent in federal class action litigation. Plaintiff has been highly responsive to all requests for information from counsel and has done everything asked of her to help achieve this outstanding result. (**Ex. 3, ¶ 39).** Accordingly, the requested incentive award for her efforts is appropriate and should be granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement and enter the Order attached hereto as **Exhibit 2**.

Dated: May 15, 2024                              Respectfully Submitted,

                                                 */s/ Matthew Z. Robb*
                                                 Steven D. Liddle*
                                                 Laura L. Sheets*
                                                 Matthew Z. Robb*
                                                 *Admitted Pro Hac Vice*
                                                 **LIDDLE SHEETS COULSON PC**
                                                 975 E. Jefferson Avenue
                                                 Detroit, Michigan 48207-3101
                                                 Tel: (313) 392-0015/Fax: (313) (313) 392-0025
                                                 sliddle@lsccounsel.com
                                                 lsheets@lsccounsel.com
                                                 mrobb@lsccounsel.com

                                                 *Attorneys for Plaintiff and the Putative Class*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2024, I electronically served this motion and brief on all Counsel of record and the Court by filing it through the Court's CM/ECF system, which will provide notice to all counsel of record.

Dated: May 15, 2024                           */s/ Matthew Z. Robb*

Attorney for Plaintiff